IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SHARA ARMSTRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 6:21-CV-170 |
| | § | |
| | § | |
| | § | |
| CUMBERLAND ACADEMY | § | |
| | § | **JURY DEMANDED** |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, SHARA ARMSTRONG, files this Original Complaint and Jury Demand against Defendant CUMBERLAND ACADEMY, alleging willful violation of Section 504 of the Rehabilitation Act of 1973. For causes of action, Plaintiff would show the Court as follows:

**I.**
**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff SHARA ARMSTRONG is a resident of Smith County, Texas.

2.    Defendant CUMBERLAND ACADEMY (hereinafter "Cumberland Academy") is an entity which can be served with Citation through its Head of School, Norma Cotton, at 1340 Shiloh Road, Tyler, TX 75703.

3.    This Court has jurisdiction to hear the merits of Ms. Armstrong's claims under 28 U.S.C. §1331 and 42 U.S.C. §12117(a). The Court has supplemental jurisdiction over Ms. Armstrong' claims arising under Texas statutory law under 28 U.S.C. §1367.

4.    Venue is proper in this district and division under 42 U.S.C. §12117(a) (incorporating 42 U.S.C. §2000e-5(f)(3)) and 28 U.S.C. §1391(b)(1) because the incidents that gave rise to the claims in this case occurred in Smith County, Texas.

5.    Counsel for Defendant has agreed to accept service of the Complaint.

## II.

## FACTUAL BACKGROUND

6.      Plaintiff was a teacher for Cumberland Academy in Tyler, Texas teaching 4th grade from September 1, 2018 until her termination on January 27, 2020. Plaintiff suffers from diabetes.

7.      On January 2, 2020, Plaintiff went to the Emergency Room with severe tooth pain during which she found out that she had an infection of her right sphenoid sinus.

8.      On January 7, 2020, Plaintiff called in sick with a severe headache which was related to her sinus infection. Plaintiff notified Whitney Newport (her principal) at 6:48am that she was having trouble finding a substitute teacher, but that she would keep calling people. Plaintiff called over 20 people and finally found Ms. Aruna.  Employees of Cumberland Academy are given eight (8) days of paid absences. This was Plaintiff's fifth absence for the school year.

9.      On January 8, 2020, Plaintiff called Ms. Luna to sub for her, and she notified the school office and other teachers.

10.     On January 9, 2020, Plaintiff called Ms. Whittington to sub for her and she notified the school office and other teachers. On that same date, Plaintiff received a phone call from what she believed was another 4th grade teacher, Ms. Powell. However, the person on the line was the principal Mrs. Newport using Ms. Powell's phone. The call came in around 10:30 a.m. to "see how I [Plaintiff] was feeling." Plaintiff informed them of her current knowledge, that she had a sinus infection and was concerned she might end up having surgery if it did not clear up.

11.     On the same day, at 3:00 p.m., Plaintiff checked her email and found that Mrs.

Newport had sent an email at 11:33 a.m. entitled "Procedures-Formal Warning. There was no warning given in the body of the email so Plaintiff responded immediately for clarification and to let them know that she would provide any documentation and work notes needed by the school. No response from Mrs. Newport.

12.     On January 10, 2020. Plaintiff went to work and talked to Mrs. Newport as soon as she got to school which was about 7:20 a.m. Plaintiff went to her office and asked for specific clarification on why she received the warning.   Plaintiff had to ask twice for Newport to tell her what she was being warned on and never received a clear answer. Newport said, "It was for if you were going to have surgery or need a permanent sub or leave of absence. We have a new HR person and anytime an email comes across that mentions anything having to do with surgery they want to know.   We need advance notice if you know you are going to be out, like with surgery. It's not anything to worry about."   Plaintiff replied that she thought maybe she was in trouble. Newport said, "We think you are a great teacher, and we want you to stay and are glad that you are here." Plaintiff told Newport again to let her know of any documentation that the school needed. Plaintiff told Newport that her family doctor was sure that she would not need any surgery and that she was taking antibiotics and already feeling better.   Plaintiff explained that her doctor had told her that she would know if she got worse because she would start to run a fever or have additional symptoms. Plaintiff was not running fever and felt better.

13.     On January 21, 2020, Plaintiff went to work as usual at 6:30 a.m.   Plaintiff performed all required duties that day including after school duty from 3:15 p.m. - 3:45 p.m.   At about 4:00 p.m., Plaintiff began to feel like her blood sugar was dropping.   At about 4:30 pm, Plaintiff had an episode of severe diarrhea.   Plaintiff's husband picked her up from work and she went home.   At 5:00 p.m. Plaintiff was getting worse and at 5:30 pm she went to Hospitality ER.

PLAINTIFF'S ORIGINAL COMPLAINT – PAGE 3

Plaintiff realized now that this was in the beginning stages of hypovolemic shock.   Ms. Cross, a

5th grade teacher at Cumberland, was in the ER also and saw Plaintiff.   Cross offered to call

Principal Newport and tell her to find Plaintiff a substitute for the following day, which she did.

14.     After examination at the ER, Plaintiff was transferred to UT East Texas Hospital at

about 4:00 a.m. early Wednesday morning.   At 7:13 a.m., Plaintiff texted Principal Newport to

confirm that Ms. Cross had contacted her the night before because she was unable to call a sub or

create sub plans because of her hospitalization.   Plaintiff also sent a text at 7:27 a.m. to the other

4th grade teachers to make them aware of the situation.   Ms. Powell said that Mr. Scurry would be

Plaintiff's sub for the day.   At 11:07 am, Mrs. Newport responded and said she hoped I felt better.

I texted her back at 11:07 am and informed her that I was being kept in the hospital through at least

the following day.

15.     On January 23, 2020, Plaintiff sent an email at 11:04 a.m. to inform Principal

Newport of her current condition and that she was being released and would be able to arrange a

sub and notes for the next day.   Plaintiff also texted Principal Newport at 4:46 p.m. to confirm

that she received her email and was told that the same sub would stay for Friday.    Plaintiff

informed Principal Newport that she was being released to return to work on Monday.

16.     On Monday, January 26, 2020, Plaintiff went in for work at 6:30 a.m. and fell ill.

Plaintiff began to try and find a sub.   Plaintiff found Ms. Byrd to cover her class and got sub notes

and the classroom ready for her.   Plaintiff went in about 7:00 a.m. to talk to Principal Newport

and was immediately told that her employment commitment to Cumberland Academy ended

immediately.   Plaintiff was informed that she allegedly did not follow procedures for when she

was out of the classroom due to her hospitalization.

17.     Cumberland Academy was aware of Plaintiff's disability because she was absent

from work the previous school year with problems related to diabetes. In the prior school year, Plaintiff was never reprimanded in any way nor was she told that there was an issue with absenteeism. Plaintiff had a great end of year evaluation.

18.     At the beginning of the 2019-2020 school year, Plaintiff wrote on her health card and discussed (again) with the school nurse, Ms. Redfern, that she was diabetic and had high blood pressure. Plaintiff believes and therefore alleges that she was terminated to avoid having to make accommodations for her disability. Plaintiff further alleges that she was discriminated against by Cumberland Academy on the basis of her actual or perceived disability in violation of the Section 504 of the Rehabilitation Act of 1973.

19.     Cumberland Academy is a recipient of Federal educational funds which qualifies as a 'program or activity' within the meaning of section 504 of the Rehabilitation Act of 1972. See 29 U.S.C. §794(b)(2)(B). Plaintiff alleges that she has been subjected to discrimination by Cumberland Academy by being barred from employment because of her disability.

### III.
### CAUSES OF ACTION
### COUNT ONE:

### Section 504 Of the Rehabilitation Act

20.     Cumberland Academy discriminated against Armstrong because of her disability in violation of Section 504 of the Rehabilitation Act of 1973. The discriminatory practices and policies include, but are not limited to the following:

(a)     Discriminating against Armstrong in the terms, conditions, and privileges of employment;
(b)     By retaliating against Armstrong in violation of the Act;
(c)     Refusing to accommodate the disability;
(d)     Terminating Armstrong on account of her disability.

## IV.
## DAMAGES

21.     As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## V.
## LIQUIDATED DAMAGES

22.     Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff further seeks liquidated damages in an amount equal to wages, salary, employment benefits, or other compensation lost by Plaintiff and described in §IV, *supra*.

## VI.
## ATTORNEYS' FEES AND EXPERT FEES

23.     A prevailing party may recover reasonable attorneys' and experts' fees. Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals.

## VII.
## JURY DEMAND

24.     Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1.      The Court assume jurisdiction of this cause;

2.      The Court award Plaintiff damages as specified above;

3.      The Court award Plaintiff reinstatement or, in the alternative, front pay;

4.      The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

5.      The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

6.      The Court award Plaintiff reinstatement with a requirement of reasonable accommodation, or, in the alternative, that the Court award front pay to the Plaintiff.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Email:   bhommel@hommelfirm.com
Hommel Law Firm
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
(903) 596-7100 Telephone/Facsimile

ATTORNEY FOR PLAINTIFF